IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN WINE & SPIRITS OF AMERICA, INC., SOUTHERN WINE & SPIRITS OF MISSOURI, INC., HARVEY R. CHAPLIN, WAYNE E. CHAPLIN, PAUL B. CHAPLIN and STEVEN R. BECKER,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DIVISION OF ALCOHOL AND TOBACCO CONTROL AND LAFAYETTE E. LACY, SUPERVISOR OF ALCOHOL AND TOBACCO CONTROL,<br><br>　　　　　Defendants. | Case No. 11-CV-04175-NKL |

**ORDER**

Pending before the Court is Major Brands, Inc's Motion to Intervene as a Defendant to Count I of the Complaint [Doc. # 17]. Defendants Division of Alcohol and Tobacco, et al., represented by the Attorney General, do not oppose Major Brands' Motion to Intervene. Plaintiffs Southern Wine & Spirits of America, Inc.; Southern Wine & Spirits of Missouri, Inc.; Harvey R. Chaplin; Wayne E. Chaplin; Paul B. Chaplin; and Steven R. Becker oppose the Motion [Doc. # 20]. For the reasons stated below, the Motion is denied.

**I.　　Background**

Chapter 311 of the Revised Statutes of Missouri creates a three-tier system for the importation, distribution and sale of alcohol products in the state. Every participant in each tier is subject to licensure or regulation by the Defendant Division of Alcohol and Tobacco Control of the Missouri Department of Public Safety ("Division"). The three tiers refer to: (1) the producer, or supplier; (2) the distributor or wholesaler; and (3) the retailer. Under the three-tier system, a producer sells its wine to a licensed in-state wholesaler, who pays excise taxes and delivers products to a licensed in-state retailer. There is no contact between suppliers and retailers under this system. [Doc. # 18 at 6-8].

Major Brands is the largest wholesaler of wine and spirits in Missouri and has been licensed by the Division for more than 75 years. [Doc. # 18 at 6]. Plaintiff Southern Wine & Spirits of America, Inc. ("SWSA"), is a Florida corporation with its principal place of business in Miami, Florida. SWSA is the largest distributor of wine, spirits, beer and various non-alcoholic beverages in the United States, with operations in 32 states and the District of Columbia. SWSA holds a Missouri license as a liquor solicitor. Pursuant to this license, SWSA may sell all kinds of intoxicating liquors to wholesalers in Missouri. [Stipulation, Doc. # 15 at 1-3].

Plaintiff Southern Wine & Spirits of Missouri, Inc. ("Southern Missouri"), a corporation organized under the laws of the State of Missouri, is a wholly owned subsidiary of SWSA. *Id.* at 1. Southern Missouri was created for the purpose of operating as a wholesaler or distributor of alcoholic beverages in the state of Missouri. *Id.* at 4. On or about July 1, 2011, Southern Missouri filed an application for a Missouri Wholesaler Liquor License. On or about July 11, 2011, the

2

Division denied the Application on the grounds that Southern Missouri is not eligible for licensure because it does not satisfy the residency requirement found in Mo. Rev. Stat. §311.060.2(3). Answer, Doc. # 9 at 3].

Section 311.060.2(3) states that "[n]o wholesaler license shall be issued to a corporation for the sale of intoxicating liquor containing alcohol in excess of five percent by weight, except to a resident corporation as defined in this section." Mo. Rev. Stat. § 311.060.3 defines "resident corporation" as

> a corporation incorporated under the laws of this state, all the officers and directors of which, and all the stockholders, who legally and beneficially own or control sixty percent or more of the stock in amount and in voting rights, shall be qualified legal voters and taxpaying citizens of the county and municipality in which they reside and who shall have been bona fide residents of the state for a period of three years continuously immediately prior to the date of filing of application for a license, provided that a stockholder need not be a voter or a taxpayer, and all the resident stockholders of which shall own, legally and beneficially, at least sixty percent of all the financial interest in the business to be licensed under this law...

As stipulated by Defendants, Southern Missouri currently meets all of the requirements for the license it seeks, except for the residency requirements in Mo. Rev. Stat. § 311.060. [Doc. # 15 at 4].

In their complaint in this action, Plaintiffs challenge the constitutionality of Missouri's residency requirements. Count I of the complaint seeks a declaration that the Division is estopped from enforcing Mo. Rev. Stat. § 311.060 against Plaintiffs and a declaration that the residency requirement provisions of the Missouri Liquor Control Law, including, but not limited to, Mo. Rev. Stat. § 311.060 are invalid and unenforceable under the Equal Protection Clause, the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution.

3

Case 2:11-cv-04175-NKL   Document 39   Filed 01/17/12   Page 3 of 8

Major Brands argues that it is entitled to intervene in this litigation as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, the Court should grant permissive intervention under Federal Rule of Civil Procedure 24(b).

## II. Discussion

The purpose of intervention is to "promote the efficient and orderly use of judicial resources by allowing persons, who might otherwise have to bring a lawsuit on their own to protect their interests or vindicate their rights, to join an ongoing lawsuit instead." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir.2009) (quoting *Mausolf v. Babbitt,* 85 F.3d 1295, 1300 (8th Cir.1996)). Thus, a threshold matter is whether Plaintiffs have standing to bring a lawsuit on their own to protect their interests. In the Eighth Circuit, a party seeking to intervene must establish Article III standing in addition to the requirements of Federal Rule of Civil Procedure 24. *Id.* at 833-34. For the following reasons, Major Brands has not established that it has standing.

### A. Standing

To establish Article III standing, Major Brands must first clearly allege facts that show an injury to a legally protected interest that is "concrete, particularized, and either actual or imminent." *Id.* (quoting *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999)). Major Brands must also establish causation of the alleged injury and that a favorable decision will likely redress the injury. *Id.*

In its briefing, Major Brands points to several injuries-in-fact it would suffer if the residency requirements in Section 311 were declared unconstitutional. Major Brands states

4

that a ruling favorable to Plaintiffs would damage the company's 1) contractual interests and business expectations with suppliers and retailers across the state, 2) investment of labor and capital, and 3) market position.[1] [Doc. # 18 at 10, 15; Doc. # 22 at 5]. Major Brands also asserts a general interest in preserving the regulatory system, arguing that a ruling favorable to Plaintiffs would allow suppliers to sell directly to non-resident wholesalers, weakening the essential role of resident wholesalers in the regulatory system and producing a breakdown of the current three-tiered regime of alcohol distribution. [Doc. # 18 at 8]. Major Brands claims that any damage to its economic or regulatory interests can be avoided through a decision rejecting Plaintiffs' claims.

The Court finds that the interests which Major Brands seeks to protect are too vague and contingent to support standing. An interest is cognizable under Rule 24(a)(2) only where it is "direct, substantial, and legally protectable." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir.1995). Interests that are remote from the subject matter of this case or that are contingent upon the occurrence of a sequence of events before becoming colorable

---

[1]Among the specific concerns listed by Major Brands is the fear that non-resident national wholesalers could use profits from other states to slash prices, use these lowered prices to reduce or eliminate competition from Missouri wholesalers and subsequently raise prices for retailers, using this revenue in order to execute the same scheme in another state. Major Brands also points to the risk that a non-resident company would circumvent Missouri taxes by taking product from a warehouse outside Missouri, on which Missouri taxes have not been paid, and then selling it to Missouri retailers at a lower price than would otherwise be possible. Major Brands also believes that non-resident companies would have less of an individualized presence or stake in Missouri communities, and would thus be more likely to violate Missouri laws against charging large and small retailers different prices, or giving large retailers free product or volume discounts. Major Brands argues that such conduct as listed above could lead to price competition in the wine and spirits business which would be contrary to the legislative intent to reduce alcohol consumption. [Doc. # 17 at 5-6].

5

do not satisfy the rule. *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir.2007). Mere economic interests are not sufficient to establish a legally protectable claim. *See Id.* (citing *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999) (economic interests staked solely on the outcome of litigation are too speculative to be direct and legally protectable).

Here, Major Brands' economic interest in preventing loss of contracts or market share is essentially a desire to avoid the competition which would result if non-resident companies such as Southern Missouri were allowed to enter as wholesalers into the Missouri liquor distribution business. Such an interest fails to rise to the level of a legally protectable interest, for purposes of standing.

Further, any harm to these economic interests, as well as Major Brands' more general interest in protecting the current three-tiered distribution scheme, is contingent not only upon the outcome of this litigation but also upon the occurrence of other events. To inflict any economic damage extending beyond simple competition, non-resident wholesalers would have to enter the Missouri market with certain fundamental advantages which are not enjoyed by resident wholesalers. In its motion, Major Brands discusses some of the alleged advantages, such as the ability to avoid Missouri taxes and engage in predatory price discrimination. However, it appears, at this stage of the litigation, that even upon a ruling favorable to the Plaintiffs, Southern Missouri would still be a Missouri corporation subject to all the same regulations applied to wholesalers whose officers and shareholders reside in Missouri. Major Brands has not shown how such adverse consequences would come to pass

<mark>6</mark>
<mark/>

<mark>Case 2:11-cv-04175-NKL   Document 39   Filed 01/17/12   Page 6 of 8</mark>

do not satisfy the rule. *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir.2007). Mere economic interests are not sufficient to establish a legally protectable claim. *See Id.* (citing *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999) (economic interests staked solely on the outcome of litigation are too speculative to be direct and legally protectable).

Here, Major Brands' economic interest in preventing loss of contracts or market share is essentially a desire to avoid the competition which would result if non-resident companies such as Southern Missouri were allowed to enter as wholesalers into the Missouri liquor distribution business. Such an interest fails to rise to the level of a legally protectable interest, for purposes of standing.

Further, any harm to these economic interests, as well as Major Brands' more general interest in protecting the current three-tiered distribution scheme, is contingent not only upon the outcome of this litigation but also upon the occurrence of other events. To inflict any economic damage extending beyond simple competition, non-resident wholesalers would have to enter the Missouri market with certain fundamental advantages which are not enjoyed by resident wholesalers. In its motion, Major Brands discusses some of the alleged advantages, such as the ability to avoid Missouri taxes and engage in predatory price discrimination. However, it appears, at this stage of the litigation, that even upon a ruling favorable to the Plaintiffs, Southern Missouri would still be a Missouri corporation subject to all the same regulations applied to wholesalers whose officers and shareholders reside in Missouri. Major Brands has not shown how such adverse consequences would come to pass

simply because the residency requirement would be removed. Occurrence of the harm alleged by Major Brands thus rests on speculation and is also contingent upon Missouri authorities ignoring or implicitly condoning any such behavior and failing to take action to make alternative changes to the regulatory or licensing regime to protect resident wholesalers. Further, whether Major Brands' own strengths as a business, such as its currently dominant market position, decades of experience, and strong relationships with suppliers and retailers are sufficient to outweigh any adverse consequence of non-residents entering the wholesale market, depends on future, intervening events.

Pragmatic considerations also support the Court's conclusion. If the Court allowed Major Brands to intervene, every resident wholesaler potentially subject to competition from non-resident wholesalers could claim a right to intervene, as would potentially any retailers or suppliers who might be affected from the potential entry of companies such as Southern Missouri. This is contrary to promoting judicial efficiency, one of the primary purposes of permitting intervention.

Therefore, the Court finds that Major Brands has not demonstrated that it has standing, much less a right to intervene under Fed. R. Civ. P. 24(a), and therefore its request for intervention is denied.

## III. Conclusion

Accordingly, it is hereby ORDERED that Major Brands' Motion to Intervene [Doc. # 17] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 17, 2012
Jefferson City, Missouri