IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN WINE & SPIRITS OF AMERICA, INC., SOUTHERN WINE & SPIRITS OF MISSOURI, INC., HARVEY R. CHAPLIN, WAYNE E. CHAPLIN, PAUL B. CHAPLIN and STEVEN R. BECKER,<br><br>      Plaintiffs,<br><br>  v.<br><br>DIVISION OF ALCOHOL AND TOBACCO CONTROL AND LAFAYETTE E. LACY, SUPERVISOR OF ALCOHOL AND TOBACCO CONTROL,<br><br>      Defendants. | Case No. 11-CV-04175-NKL |

**ORDER**

Pending before the Court is a constitutional challenge to Missouri's alcohol regulations requiring wholesalers to be Missouri residents before receiving a license to distribute liquor in the State. The parties have filed cross-motions for summary judgment. For the following reasons, the Court grants Defendants' Motion [Doc. # 35] and denies the same to Plaintiffs [Doc. # 33].

**I.    Background**

All facts in this section have been stipulated by the parties. Plaintiff Southern Wine & Spirits of America, Inc. ("SWSA"), a Florida corporation, seeks entry into the liquor

wholesaling market in Missouri. SWSA is the largest distributor of wine, spirits, beer and various non-alcoholic beverages in the United States, with operations in 32 states and the District of Columbia. SWSA currently holds a Missouri license as a liquor solicitor which allows it to sell all kinds of intoxicating liquors to wholesalers in Missouri. In order to become a wholesaler of alcoholic beverages, the individual Plaintiffs along with SWSA created a wholly owned subsidiary of SWSA, Southern Wine & Spirits of Missouri, Inc. ("Southern Missouri"). Southern Missouri is a Missouri corporation organized under the laws of the State of Missouri. In July of 2011, Southern Missouri filed an application for a Missouri Wholesaler Liquor License with Defendant Division of Alcohol and Tobacco Control of the Missouri Department of Public Safety ("Division"). However, the Division denied the application on the grounds that Southern Missouri does not satisfy the residency requirement found in Mo. Rev. Stat. § 311.060.2(3). The individual Plaintiffs in this action are Florida residents who are officers and directors of SWSA and Southern Missouri.

### A. Missouri's Regulatory Scheme

Chapter 311 of the Revised Statutes of Missouri creates a three-tier system for the importation, distribution and sale of alcohol products in the State. Every participant in each tier is subject to licensure or regulation by the Division. The three tiers refer to: (1) the producer, or supplier;[1] (2) the distributor or wholesaler; and (3) the retailer. Under the

---

[1] In addition to producers, there are also solicitors, who are given licenses in Missouri to acquire alcoholic beverages from the producers and sell those products to wholesalers. Though the licensing scheme treats producers and solicitors as separate entities, the Court will, for practical purposes, refer to both groups as "producers" who comprise the first tier of Missouri's alcohol distribution scheme.

three-tier system, a producer sells its wine to a licensed in-state wholesaler, who pays excise taxes and delivers products to a licensed in-state retailer. There is no contact between suppliers and retailers under this system.

Section 311.060.2(3) of the Missouri Liquor Control Law imposes residency requirements upon wholesalers. The regulation states that "[n]o wholesaler license shall be issued to a corporation for the sale of intoxicating liquor containing alcohol in excess of five percent by weight, except to a resident corporation as defined in this section." To be considered a resident corporation, Missouri regulations require that all corporate officers, directors, and shareholders who own or control sixty percent or more of the company's stock be Missouri residents for at least three years, as well as voters and taxpaying citizens of the county and municipality in which they reside. Mo. Rev. Stat. § 311.060.3.[2] These requirements are imposed upon wholesalers but not upon retailers.[3]

---

[2] Section 311.060.2(3) defines "resident corporation" as

a corporation incorporated under the laws of this state, all the officers and directors of which, and all the stockholders, who legally and beneficially own or control sixty percent or more of the stock in amount and in voting rights, shall be qualified legal voters and taxpaying citizens of the county and municipality in which they reside and who shall have been bona fide residents of the state for a period of three years continuously immediately prior to the date of filing of application for a license, provided that a stockholder need not be a voter or a taxpayer, and all the resident stockholders of which shall own, legally and beneficially, at least sixty percent of all the financial interest in the business to be licensed under this law...

Mo. Rev. Stat. § 311.060.3.

[3] Missouri has a non-resident corporation, Mid-Continent Distributors, Inc. (known as "Glazers"), licensed and operating in the State as a Wholesaler-Solicitor, but it was grandfathered in because a predecessor company was licensed before 1947.

Southern Missouri currently meets all of the requirements for the license it seeks, except for the residency requirements, as its officers and directors are all Florida residents.

In their complaint in this action, Plaintiffs challenge the constitutionality of the State's residency requirements under the Commerce Clause, the Privileges and Immunities Clause, and the Equal Protection Clause of the United States Constitution. They seek a declaration that the Division is estopped from enforcing the residency requirements against Plaintiffs.

## II. Discussion

### A. Commerce Clause

Plaintiffs argue that Missouri's resident corporation requirements violate the Commerce Clause by treating non-residents engaged in interstate commerce less favorably than Missouri residents engaged in the same. Plaintiffs do not dispute that the requirements result in unequal treatment of residents and non-residents but they argue that the Twenty-First Amendment gives states the authority to engage in such discrimination at the alcohol wholesaling level.

The Commerce Clause gives Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I § 8, cl.3. It is a settled legal principle that this affirmative grant of Congressional power implies a negative restraint on states, who are prohibited from enacting legislation interfering with or burdening interstate commerce. *See, e.g., Dennis v. Higgins*, 498 U.S. 439, 447 (1991). States may only pass laws discriminating against out-of-state economic interests if the laws "advance[ ] a legitimate local purpose that cannot be adequately served by reasonable

4

nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988).

However, the Twenty-first Amendment complicates the application of the dormant Commerce Clause when state regulation of alcoholic beverages is concerned. Section Two of the Amendment provides that, "[t]he transportation or importation into any State ... for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2. The Amendment, which ended Prohibition by repealing the Eighteenth Amendment, was enacted to protect State interests in "promoting temperance, ensuring orderly market conditions, and raising revenue" through regulation of the production and distribution of alcoholic beverages. *North Dakota v. United States*, 495 U.S. 423, 432 (1990) (plurality opinion). To accomplish these ends, "some power to regulate interstate commerce was withdrawn from Congress so that the Commerce Clause could not be construed to prevent the enforcement of State laws regulating the importation of alcoholic beverages and the manufacture and consumption of alcoholic beverages within State borders." *Brooks v. Vassar*, 462 F.3d 341 (4th Cir. 2006) (citing *Beskind v. Easley*, 325 F.3d 506, 513 (4th Cir.2003).

The limitations on the regulation of interstate commerce imposed by the Commerce Clause are thus in a tense relationship with the broad powers to regulate alcohol which were given to states through the Twenty-first Amendment. However, even though the latter Amendment provides states with broad regulatory authority over alcohol, it does not give a state unfettered discretion to make any and all alcohol regulations without regard to

5

Commerce Clause limitations. The Supreme Court has provided an analytical framework for addressing the tension between the two different constitutional provisions. If the state measure is shown to discriminate against out-of-state producers or products, it cannot be upheld simply by summary reliance upon the Twenty-first Amendment, but will only be upheld if it reasonably advances legitimate state interests that cannot be adequately served by reasonable nondiscriminatory alternatives. *Granholm v. Heald*, 544 U.S. 460, 462 (2005). State policies are only "protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent." *Id.* at 463; *see also Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185 (2nd Cir. 2009) (discussing and applying *Granholm*'s analytical framework). Using this test, the *Granholm* court struck down New York and Michigan laws[4] which allowed in-state wineries to ship wine directly to consumers while prohibiting out-of-state wineries from doing the same. The Court found these laws discriminatory under the dormant Commerce Clause, as they treated liquor produced out-of-state differently than its in-state counterpart. *Id.*

In reaching this holding, the *Granholm* Court analyzed the legal history behind the Amendment, concluding that it was intended "to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use.

---

[4] Michigan's law prohibited any shipment from out-of-state wineries but allowed in-state wineries to ship to customers by obtaining a permit. New York's more complex scheme allowed out-of-state wineries to ship to New York customers if the wineries established a physical presence in the state and participated in New York's three-tier distribution system; however, in-state wineries were allowed to bypass the three-tier system and ship wine directly to customers. *See Granholm,* 544 U.S. at 460-61.

6

The Amendment did not give States the authority to pass nonuniform laws in order to discriminate against out-of-state goods." *Granholm,* 544 U.S. at 484-85.

Even though the *Granholm* holding only related directly to producers of alcoholic goods, Plaintiffs argue that it must be extended to wholesalers as well. However, such an extension would contradict the language in *Granholm*. The *Granholm* court emphasized that its holding would not "call into question the constitutionality of the three-tier system"[5] insofar as " '[t]he Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system.'" *Id.* at 488-56 (quoting *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980)). The Court went on to declare the three-tier system "unquestionably legitimate" and, as discussed previously, stated explicitly that "[s]tate policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent." *Id* at 463.[6] The Michigan and New York

---

[5] The *Granholm* court described Missouri's three-tier system as follows:

> Producers or distillers of alcoholic beverages, whether located in state or out of state, generally may sell only to licensed in-state wholesalers. Wholesalers, in turn, may sell only to in-state retailers. Licensed retailers are the final link in the chain, selling alcoholic beverages to consumers at retail locations and, subject to certain restrictions, through home delivery.

*Id.* at 468-69 (citations omitted) (emphasis added).

[6] The Granholm Court cited favorably Justice Scalia's concurring statement in *North Dakota v. United States* that "[t]he Twenty-first Amendment ... empowers North Dakota to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler." *Id.* at 489 (quoting *North Dakota*, 495 U.S.423 at 447 (Scalia, J., concurring in judgment)).

7

laws, however, were unconstitutional because they represented "straightforward attempts to discriminate in favor of local producers." *Id.* As the Second Circuit has noted:

> *Granholm* validates evenhanded state policies regulating the importation and distribution of alcoholic beverages under the Twenty-first Amendment. It is only where states create discriminatory exceptions to the three-tier system, allowing in-state, but not out-of-state, liquor to bypass the three regulatory tiers, that their laws are subject to invalidation based on the Commerce Clause.

*Arnold's Wines*, 571 F.3d at 190.

Unlike in *Granholm*, Missouri's residency requirements do not discriminate against any types of alcohol products or producers; liquor produced out-of-state is funneled through Missouri's three-tier system in the same fashion as its in-state equivalent. Rather, the disparate treatment embodied in the regulations only affects wholesalers charged with transporting alcohol already lawfully present in the State. *Id.* at 488. The power to structure the liquor distribution system falls clearly within the State's "virtually complete control" under the Twenty-first Amendment. Regulations which discriminate in favor of in-state wholesalers are an integral component of a three-tier system, as the *Granholm* court acknowledged. *See also Brooks v. Vassar*, 462 F.3d 341, 352-54 (4th Cir. 2006) (stating that any argument "that compares the status of any other in-state entity under the three-tier system with its out-of-state counterpart is nothing different than an argument challenging the three-tier system itself [and] . . . is foreclosed by the Twenty-first Amendment and the Supreme Court's decision in Granholm, which upheld the three-tier system as 'unquestionably legitimate.'").

8

The language of *Granholm* thus allows Missouri to discriminate in favor of in-state wholesalers. However, Plaintiffs argue that Southern Missouri should be considered an in-state wholesaler, as it is a Missouri corporation, and will ostensibly have a Missouri facility and managing officer, and will therefore not constitute a threat to the three-tier system if allowed to enter the State's wholesaling market. However, this argument is unpersuasive. The residency regulations govern the extent of the presence which a wholesaler must have in order to properly be considered an in-state wholesaler. Missouri, under the power of the Twenty-first Amendment, has required a substantial in-state presence of the wholesaling company, beyond the physical presence of a warehouse and a limited staff. Instead, Missouri's liquor control laws have demanded that the leadership of the company, as defined by its officers, managers and major shareholders, be residents of Missouri counties. It is within Missouri's power to structure its three-tier distribution system in order to require an intensely localized presence and individualized accountability for the people in charge of a liquor wholesaling company. Some other states in the U.S. also have such requirements, while others have decided to structure their systems differently, for example, requiring only that the wholesaler have an in-state warehouse. However, the fact that Missouri requires its wholesalers to have a stronger in-state presence than many other states has not been shown by Defendants to place it outside the scope of Twenty-first Amendment protection, for these regulations, do, in the words of *Granholm,* "treat liquor produced out of state the same as its domestic equivalent."

In opposition to this argument, Plaintiffs rely on a Fifth Circuit case, *Cooper v. McBeath*, 11 F.3d 547 (5th Cir. 1994), which held unconstitutional Texas regulations requiring a period of Texas residency before a mixed beverage retailer permit could issue. However, this case was decided before the *Granholm* court clarified for lower courts the proper interaction between the Twenty-First Amendment and Commerce Clause. From the start of its analysis, the *Cooper* court placed the "towering" burden squarely on the State to show that its statutes "advance a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 553. After conducting this analysis, and determining that Texas did not show such a purpose, the court then ruled that the statutes were not saved by the Twenty-first Amendment.[7] However, the court did not have the benefit of the language in *Granholm*, which reaffirmed the constitutionality of the three-tier system, and focused the reach of the Commerce Clause upon disparate treatment of producers and alcoholic goods, leaving intact states' ability to regulate the structure of their alcohol distribution systems. The only post *Granholm* decision cited by Plaintiffs, *Southern Wine & Spirits of Texas, Inc. v. Steen*, 486 F. Supp. 2d 626 (W.D. Tex. 2007), also cannot be relied upon as it followed the reasoning and ruling of *Cooper*.

**B.     Privileges and Immunities Clause**

---

[7] In rendering this analysis, the *Cooper* court did not appear to consider the Supreme Court's earlier language that "[g]iven the special protection afforded to state liquor control policies by the Twenty-first Amendment, they are supported by a strong presumption of validity and should not be set aside lightly." *North Dakota*, 495 U.S. at 432.

Plaintiffs also argue that the residency requirements violate the individual Plaintiffs' rights under the Privileges and Immunities Clause to do business across state lines. The Privileges and Immunities Clause states: "The Citizens of each state shall be entitled to all Privileges and Immunities of Citizens in the several states." U.S. Const. Art. IV, § 2. The privileges and immunities claimed by Plaintiffs are not protected on account of the Twenty-First Amendment's broad grant of power to the states, as discussed above, to implement three-tier liquor distribution systems which disparately affect non-resident wholesalers and retailers. *See e.g. Steamers Service Co. v. Wright*, 505 S.W.2d 65, 68 (Mo. 1974) ("the liquor business does not stand upon the same plane, in the eyes of the law, with other commercial occupations...and is thereby separated or removed from the natural rights, privileges and immunities of the citizen."). However, even if a cause of action did exist, Plaintiffs lack standing to assert a claim. Corporations are not protected by the Clause, and neither are injuries to individual plaintiffs which flow directly and solely from the injury to the corporation. *See Chance Mgmt. v. South Dakota,* 97 F.3d 1107, 1115-16 (8th Cir. 1996). In *Chance Mgmt*, a corporation was denied a license to operate a video lottery machine for the South Dakota lottery because it could not meet the requirement that South Dakota residents hold the majority ownership interest in the corporation. 97 F.3d at 1108. The corporation's majority shareholder was a Wyoming resident. The Eighth Circuit agreed with the district court that corporations were not protected by the Privileges and Immunities Clause, and that the individual Plaintiffs could not bring claims under the Clause because their injuries flowed from the denial of the lottery operator license to the corporation and his

11

status as a corporate shareholder. Here, the relevant facts lead to the same legal result. The individual Plaintiffs have not applied for a wholesaler license; any injury suffered by Southern Missouri's officers and directors would stem from the denial of the corporation's license and thus, Plaintiffs' injury is not cognizable under the Privileges and Immunities Clause.

### C. Equal Protection Clause

Plaintiffs also allege that the residency requirements violate the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment provides that a state shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To prove a violation of the Equal Protection Clause, one must prove that the legislature treated it differently than similarly situated entities and the different treatment was not rationally related to a legitimate government objective. *See Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006). "[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Schutz v. Thorne*, 415 F.3d 1128, 1136 (10th Cir. 2005).

As discussed above, the *Granholm* court has also declared the constitutionality of the three-tier liquor distribution system and its disparate treatment of non-resident and resident wholesalers. Though the Twenty-first Amendment defeats the need for an equal protection analysis, in any case, the residency requirements easily satisfy the rational basis test. The need for greater accountability in liquor distribution is a primary reason for the creation of the three-tier system in the first place, and imposing a requirement that the leadership of a

wholesaler be present in the State can rationally be assumed to promote greater accountability and responsibility on the part of the wholesaler towards the community. The fact that the requirements are only imposed upon wholesalers and not on retailers does not render it irrational, as retailers are more visible in the community and thus are likely subject to greater pressure from the public and law enforcement than wholesalers acting in an irresponsible manner.[8] Further, the fact that the General Assembly of Missouri chose to impose residency requirements upon liquor containing more than five percent alcohol by weight, but did not impose similar restrictions on beer, has a rational basis given that greater risks of harm to the community may result from consumption of beverages with higher alcohol content.

## III.   Conclusion

Accordingly, it is hereby ORDERED that Defendants' Motion for Summary Judgment [Doc. # 35] is hereby GRANTED and Plaintiffs' Motion [Doc. # 33] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  May 29, 2012
Jefferson City, Missouri

---

[8] There is a different residency restriction placed upon retailers. Though the retail corporation does not have to be a Missouri resident, the General Assembly has required that the "managing officer of such corporation [be] of good moral character and a qualified legal voter and taxpaying citizen of the county, town, city or village." Mo. Rev. Stat. § 311.060.1.